ISAAC THIBODEAUX                                    CIVIL ACTION

VERSUS                                              NO. 16-12318

CHEVRON U.S.A., INC., ET AL.                        SECTION "B"(4)

ORDER AND REASONS

Before the Court is Defendant Jade Marine, Inc.'s "Motion for Summary Judgment." Rec. Doc. 51. Plaintiff timely filed an opposition memorandum. Rec. Doc. 54. Defendant then requested, and was granted, leave to file a reply memorandum. Rec. Doc. 57. After further discovery, Defendant requested, and was granted, leave to file a supplemental memorandum. Rec. Doc. 61. Pursuant to this Court's Order (Rec. Doc. 59), Plaintiff timely filed a response to the supplemental brief (Rec. Doc. 61). For the reasons discussed below,

**IT IS ORDERED** that Defendant's motion for summary judgment (Rec. Doc. 51) is **DENIED WITHOUT PREJUDICE.**

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of injuries suffered by Plaintiff Isaac Thibodeaux ("Plaintiff") on April 28, 2016. Rec. Doc. 1 at ¶ IV. On that date, Plaintiff used a swing rope to transfer from a platform to the M/V MR. CLINT ("CLINT"), owned and operated by Defendant Chevron U.S.A., Inc. ("Chevron"). *Id.* at ¶¶ V, VII. Plaintiff alleges that the CLINT "failed to properly land

[P]laintiff on the vessel, causing him to land in the" Gulf of Mexico, where he was forced to stay "for an extended period, grasping onto the leg of the platform . . . ." *Id.* at ¶ VII.

Plaintiff also alleges in his original complaint that the M/V REVELATION ("REVELATION"), owned and operated by Defendant Jade Marine, Inc. ("Jade Marine"), was an unseaworthy vessel because it did not have a properly-trained crew. *Id.* at ¶¶ VI, VIII. Plaintiff clarified in his amended complaint that the REVELATION "failed to follow industry custom and/or applicable Chevron safety rules and/or policies by dropping off and leaving [P]laintiff on the platform alone." Rec. Doc. 15 at ¶ VII. In the instant motion, Jade Marine explains that it was "hired by Chevron to provide passenger and equipment transportation services" and that, on the day of the accident, Jade Marine transported Plaintiff to platform BMI #10 via the REVELATION. Rec. Doc. 51-2 at 1-2. After an hour, the REVELATION was instructed to transfer personnel at a different structure about fifteen to twenty minutes away, so it left Plaintiff unattended on the platform. *Id.*

When Plaintiff completed his work aboard the BMI #10, he radioed for the CLINT to pick him up. Rec. Doc. 51-2 at 2. After Plaintiff subsequently fell into the water, the CLINT was unable to retrieve him and contacted the REVELATION for assistance. *Id.* The REVELATION "arrived on scene within fifteen to twenty minutes

and was able to retrieve [Plaintiff] from the water without incident." *Id.* at 2-3.

Plaintiff amended his complaint a second time to add Defendant Danos & Curole Marine Contractors, L.L.C. ("Danos"), which Plaintiff alleges employed the captain of the CLINT at all relevant times. Rec. Doc. 29 at ¶ 2. In each complaint, Plaintiff alleged that Defendants acted negligently. Rec. Docs. 1, 15, 29 at ¶ VIII.

## II. THE PARTIES' CONTENTIONS

Jade Marine argues that Plaintiff has not cited to "any policy promulgated by Chevron or industry custom" that would require Jade Marine or the REVELATION to standby at the platform until Plaintiff completed his work. Rec. Doc. 51-2 at 3. Accordingly, it maintains that there is no evidence that it owed a duty to Plaintiff. *Id.* at 6.

Plaintiff responds that Jade Marine's motion is premature. Rec. Doc. 54 at 3. He moves under Federal Rule of Civil Procedure 56(d) to defer ruling on this motion until after discovery is completed. *Id.* at 5.

Jade Marine counters that this matter has been pending for a year and a significant amount of written discovery has been completed. Rec. Doc. 57 at 1.

## III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are

insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

Rule 56(d) nevertheless provides that "[i]f a nonmovant shows by affidavit . . . that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). "While Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted, the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422-23 (5th Cir. 2016)). "In particular, the party opposing summary judgment must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citations and internal quotation marks omitted). Therefore, it is necessary to consider the basis for Jade Marine's motion for summary judgment and the facts that Plaintiff alleges could be discovered to present a genuine issue of material fact.

"General principles of negligence law determine whether the defendant was negligent in this maritime tort action." *Bourg v.*

*Hebert Marine, Inc.*, No. 86-2266, 1988 WL 2690, at *3 (E.D. La. Jan. 14, 1988) (citing *Casaceli v. Martech Int'l, Inc.*, 774 F.2d 1322, 1328 (5th Cir. 1985); *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980); *S. C. Loveland, Inc. v. E. W. Towing, Inc.*, 608 F.2d 160, 165 (5th Cir. 1979)); *see also In re Signal Int'l, LLC*, 579 F.3d 478, 491 (5th Cir. 2009). "Negligence is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under like circumstances." *Bourg*, 1988 WL 2690, at *3 (citing *Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54 (1943)). Specifically, "[t]he plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) (citing *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985)).

"The existence of a duty *vel non* is a question of law." *Authement v. Ingram Barge Co.*, 977 F. Supp. 2d 606, 612 (E.D. La. 2013) (citing *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010)). "[T]he determination of whether a party owes a duty to another depends on a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000) (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833

6

F.2d 65, 67 (5th Cir. 1987)). Generally, "a plaintiff is owed a duty of ordinary care under the circumstances." *In re Great Lakes*, 624 F.3d at 211 (citations omitted).

Jade Marine relied on various pieces of evidence to support its motion. For example, when asked to "state in specific factual detail each act or omission of each and every person that you allege either caused or contributed to the alleged incident," Plaintiff responded

> Plaintiff has retained to [sic] Commander Don Green to address the safety issues involved in this case. Commander Green's preliminary report has been produced and a supplemental report will be produced in accordance with the Court's Scheduling Order. Nevertheless, in the spirit of cooperation, the acts or omission[s] that caused or contributed to this incident include, but are not limited to:  there being an unmanned platform without any means of escape or rescue in the event of an emergency; . . . the failure of the [REVELATION] to follow industry custom and/or applicable Chevron safety rules and/or policies by dropping off and leaving [P]laintiff on the platform alone.

Rec. Doc. 51-6 at 16-17.

In his "OPINIONS" section, Plaintiff's expert stated that Plaintiff, "having been delivered to the platform by the [REVELATION], left him alone on the unmanned platform without any means of escape or rescue in the event of an emergency" and that "[t]he failure of [the REVELATION] to standby the platform until [Plaintiff] finished his work created a hazardous condition and directly contributed to the cause of this incident." Rec. Doc. 51-7 at 6.

> It is my opinion that the [REVELATION] failed to consider
> or appreciate the dangers and potential hazards of
> leaving [Plaintiff] alone on an unmanned platform, which
> had no man overboard ladders installed for access by
> persons falling overboard or other means of escape in
> the event of an emergency.

*Id.* Nonetheless, the expert specifically stated that he did not know "whether or not Chevron has a policy regarding personnel such as [Plaintiff] to be left alone on a platform . . . ." *Id.*

In a root cause analysis and an investigation report, both produced by Chevron, neither Jade Marine nor the REVELATION is cited as a cause of the accident. Rec. Docs. 51-8 at 1; 51-5 at 4, 13.

Finally, Jade Marine cited to Chevron's admission that it was not customary for personnel transfer vessels to remain at a platform until the personnel finished their work if another drop-off or pick-up was requested and that there was no Chevron policy requiring the REVELATION to remain at a platform until personnel finished their work. Rec. Doc. 51-4 at 5. Consequently, Jade Marine argues that "Chevron's representatives, who possessed the necessary information to prepare its discovery responses, have presented evidence addressing Jade Marine's duties and responsibilities." Rec. Doc. 57 at 3.

In its supplemental memorandum, Defendant cites to various portions of Plaintiff's deposition testimony, a safety investigation report that Plaintiff completed following the

8

incident, Chevron's safety policies, and portions of the CLINT's captain's deposition testimony. Rec. Doc. 60. First, Plaintiff testified that he worked alone on platforms around sixty percent of the time (Rec. Doc. 60-2 at 10), he was unaware of any rule prohibiting him from working alone on a platform (*id.*), and he did not ask the REVELATION to stay near the platform or exert stop-work authority when the REVELATION left (*id.* at 16-17). Second, Plaintiff did not state in his investigation report that the REVELATION should not have left him. *Id.* at 24. Third, Chevron's Solitary Worker Guidelines merely required transport vessels to be within one hour of a person working aboard a platform alone (Rec. Doc. 60-3 at 2) and the REVELATION was only twenty minutes from the BMI #10 at the time of the incident. Finally, the captain of the CLINT on the day of the incident testified that it was common practice to drop personnel off on a platform where they would be working alone (Rec. Doc. 60-5 at 6-7) and that, to his knowledge, no one has ever exercised stop-work authority because of that practice (*id.* at 9).

In response, Plaintiff's attorney, Tammy D. Harris, submitted an affidavit stating that discovery is in its infancy and that the following discovery has not been resolved:  the Jade Marine crew's job descriptions, emails between Jade Marine and Chevron regarding the terms of the Master Time Charter ("MTC") between them, the on-hire letter referenced in the MTC, the standard of performance

9

required by the MTC, and witness depositions (including of representatives for Defendants). Rec. Doc. 54-1 at ¶¶ 4-6. Plaintiff argues that it is possible that such discovery could reveal that a captain or supervisor was told never to leave personnel on the platform alone and/or to check the platform for a safe means of escape for a man overboard before leaving personnel alone. Rec. Doc. 54 at 4.

In his memorandum, Plaintiff further responds that he has not had the opportunity to depose his expert, who is qualified to offer his opinion that Plaintiff should not have been left on the platform alone. Rec. Doc. 54 at 5. Plaintiff maintains that Chevron does not need to blame Jade Marine in order for Plaintiff to have a negligence claim against Jade Marine. *Id.* at 9. Plaintiff also produces evidence that Jade Marine was contractually required to present a crew with "significant expertise" that would comply with "applicable laws and regulations . . . ." *Id.* at 6 (citing Rec. Doc. 54-2 at 2, 4). Because the Coast Guard regulations require facilities on the Outer Continental Shelf to be equipped with various means of escape (*see* 33 C.F.R. § 143.101), Plaintiff maintains that, pursuant to its contract, Jade Marine knew or should have known that leaving Plaintiff on a platform with no safe means of escape would be dangerous (Rec. Doc. 54 at 8).

In response to Defendant's supplemental memorandum, Plaintiff reiterates that the motion is "grossly premature." Rec. Doc. 61 at

10

1. He specifically notes that the REVELATION captain is set to be deposed on September 9, 2017 and that no Jade Marine witnesses have yet been deposed. *Id.* Further, the REVELATION captain completed a "Good Catch" report following the incident in which he indicated that "the unsafe act [he] observed" was corrected by "not put[ting] out perrsonell [sic] alone on platforms." Rec. Doc. 61-2 at 1. Addressing the new evidence submitted by Defendant, Plaintiff notes that he testified that he was unaware of the REVELATION's job scope and/or standard procedures (Rec. Doc. 60-2 at 17-18); the report he completed discussed the attempted transfer and its aftermath, not the events leading up to the transfer; and that the CLINT captain is not a Jade Marine employee and therefore cannot testify to Defendant's duties (Rec. Doc. 61 at 2-3).

Jade Marine relies on *Koprowski v. Legacy Offshore, LLC*, in which the plaintiff was working on a vessel owned by Aries Marine and chartered to Newfield Exploration. No. 09-321, 2010 WL 4705111, at *1 (W.D. La. Nov. 12, 2010). The plaintiff alleged that, on two occasions, he breathed oxygen for 50 minutes, instead of the prescribed 39 minutes, during decompression. *Id.* As to Aries Marine, he alleged that the vessel's crane was not equipped with a swivel, making the "stage" unsafe and the vessel unseaworthy. *Id.* at *2. Aries Marine argued on summary judgment that there was no evidence that it breached a duty of reasonable care; it pointed to the plaintiff's deposition testimony that "he had no complaints

about the vessel and did not see anything about the vessel that may have contributed to his injuries." *Id.* at *4. The plaintiff responded that Aries Marine was negligent in failing to provide the "Launch and Recovery System" ("LARS") "to ensure the safe and expedient transfer of divers to and from the water and to provide a stable platform on which to complete in-water decompression." *Id.* The Court characterized the arguments in the following way:

> [P]laintiff claims Aries Marine "failed to recognize the duty to provide [a] properly rated launch and recovery system[]," without citing any authority, whether factual or jurisprudential, for the existence of such a duty. In its motion for summary judgment, Aries Marine argues and presents evidence to support its argument that it owed no duty, by way of contract, operation of law, or otherwise, to provide a LARS system; that it in no way interfered with the possible use or placement of a LARS system on its vessel; and that it had no responsibility for diver decompression, or timing within that process . . . .

*Id.* at *6. The plaintiff merely argued that, by agreeing to provide the crane for diving support, Aries Marine necessarily involved itself in the diving operation; his expert consequently found that "this raise[d] serious issue [sic] of liability on the part of the vessel operator." *Id.* at *7. The court found that the expert's position offered, "in effect, a legal opinion" and the expert "lack[ed] the authority to establish such a duty." *Id.* Essentially, the court held that there was no evidence that Aries Marine owed a duty to provide a LARS system, exercised control over the diving process, or that it "*breached the duty* of reasonable care it owed

12

to the plaintiff by offering its crane . . . ." *Id.* at *9 (emphasis in original). It accordingly entered summary judgment dismissing the plaintiff's negligence claim under the general maritime law. *Id.* at *10.[1]

In his original response, Plaintiff argued that *Koprowski* is distinguishable because (1) the parties had deposed the plaintiff and at least one witness in that case; (2) the plaintiff testified that he had no complaints about the vessel; (3) the witness testified that he did not know of any reason to believe the defendant contributed to the plaintiff's injuries; and (4) the plaintiff did not come forward with "any authority, whether factual or jurisprudential, for the existence of . . . a duty," while, here, Plaintiff has a pending deposition of a key REVELATION witness to complete for the purposes of developing the factual record. Rec. Doc. 54 at 8-9.

Plaintiff's complaint and responses to interrogatories allege that Jade Marine did not follow industry custom and/or Chevron policies when the REVELATION left him alone on the platform. Rec. Docs. 15 at ¶ VII; 51-6 at 16-17. The documentary evidence presented by Jade Marine, particularly Chevron's responses to

---

[1] In its reply memorandum, Jade Marine cites to other cases in support of its motion. *See, e.g., Laughlin v. Falcon Operators, Inc.*, 166 F. Supp. 2d 501 (E.D. La. 2001), *judgment entered,* No. 00-1484, 2001 WL 474284 (E.D. La. May 3, 2001); *Canal Barge Co. v. Sun Coast Contracting Servs., LLC*, No. 14-254, 2015 WL 423040, at *1 (E.D. La. Feb. 2, 2015). However, like *Koprowski*, neither of these cases presented a Rule 56(d) problem. Therefore, those cases are necessarily distinguishable.

requests for admissions and Chevron's Solitary Worker Guidelines, suggests that it was not customary, or required by Chevron policy, for a vessel to remain at a platform until personnel completed their work. Rec. Doc. 51-4 at 5. However, Plaintiff has not had the opportunity to depose the captain of the REVELATION, who could conceivably contradict these responses. Because the Court cannot weigh the evidence or determine credibility on a motion for summary judgment (*Blank v. Bell*, 634 F. App'x 445, 447 (5th Cir.), *cert. denied,* 136 S. Ct. 2036 (2016) (citations omitted)), such testimony could present a genuine issue of material fact precluding summary judgment. Plus, Plaintiff presented the REVELATION captain's "Good Catch" report, which suggests, at the very least, a need to clarify the factual statements therein.  This Court's scheduling order provides that discovery does not have to be completed until January 30, 2018 and that dispositive motions must be filed in sufficient time to permit hearing thereon no later than February 9, 2018. Rec. Doc. 49 at 1. Plaintiff should therefore be given an opportunity to further develop the factual record as noted above.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant Jade Marine's motion for summary judgment (Rec. Doc. 51) is **DENIED WITHOUT PREJUDICE** to re-urge **after the noted deposition is completed**, pursuant to Federal Rule of Civil Procedure 56(d). The Court is not moved by conclusory

14

statements about other "possible" evidence that remains unresolved in this year-old case. Moreover, the proposed expert opinion appears to offer, at this juncture, nothing more than inadmissible legal conclusions about Jade Marine's conduct.[2]

New Orleans, Louisiana, this 15th day of August, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Notably, the claims against Chevron and Danos remain viable.