**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ISAAC THIBODEAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-12318** |
| **CHEVRON U.S.A., INC., ET AL.** | **SECTION "B"(4)** |

**ORDER AND REASONS**

Defendant Chevron, U.S.A., Inc. filed a motion for summary judgment on Plaintiff's negligence claim. Rec. Doc. 85. Plaintiff timely filed an opposition. Rec. Doc. 93. Defendant Danos & Curole Marine Contractors, LLC also filed an opposition. Rec. Doc. 88.

For the reasons discussed below,

**IT IS ORDERED** that Defendant Chevron's motion (Rec. Doc. 85) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Chevron's motion for leave to file a reply (R.D. 107) is **DENIED** as unnecessary.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Plaintiff Isaac Thibodeaux was inspecting an oil platform in the Gulf of Mexico on April 28, 2016. Rec Docs. 51-3 ¶¶ 1, 7; 54-3 ¶¶ 1, 7. Plaintiff was alone working on the platform. Rec. Doc. 15 ¶ 1. Once Plaintiff finished his work, he radioed the M/V Mr. Clint to pick him up. Rec. Docs. 51-3 ¶ 14; 54-3 ¶ 14. When the Mr. Clint arrived at the platform, Plaintiff climbed

---

[1] The factual background and procedural history of this case were set out extensively in previous Orders and Reasons. *See* Rec. Docs. 63, 66. The following discussion relates the facts relevant to the instant motion.

1

down a ladder from the top of the platform to a boat landing closer to the water line. *See* Rec. Doc. 93-2. The weather was deteriorating and there were waves crashing against the boat landing. *See* Rec. Doc. 85-5 at 10; 85-6 at 6.

Ricky Trosclair, Captain of the Mr. Clint, was also working alone and backed the Mr. Clint up to the platform. *See* Rec. Doc. 85-6 at 6, 27. Plaintiff attempted to board the Mr. Clint by executing a rope transfer, which involves grabbing onto a rope that hangs down from the oil platform and swinging out from the boat landing over the Mr. Clint. *See* Rec. Doc. 85-5 at 11-13. While Plaintiff was swinging out to the Mr. Clint, a wave hit Plaintiff's leg and Plaintiff fell into the ocean. *See* Rec. Doc. 85-5 at 11-13. When Captain Trosclair saw Plaintiff falling into the ocean, Captain Trosclair moved the Mr. Clint away from Plaintiff and the platform. *See* Rec. Doc. 85-6 at 27-28.

Plaintiff swam back to the platform, grabbed onto the boat landing, and braced himself against the waves by pressing one foot against a crossbar on the platform. *See* Rec. Doc. 85-5 at 15-17. Plaintiff did not climb back onto the boat landing. *See* Rec. Doc. 85-5 at 18-19. Captain Trosclair moved to the back of the Mr. Clint, life preserver in hand. *See* Rec. Doc. 85-6 at 4-5. The Mr. Clint was equipped with two life preservers, each attached to a seventy-five foot rope, and a Jacob's ladder, which is a flexible ladder that can be thrown over the side of a boat to allow people

to climb up into the boat. *See* Rec. Doc. 85-6 at 8-9, 10-12, 15-20. While Captain Trosclair testified that he could have thrown a life preserver to Plaintiff and lowered the Jacob's ladder over the side of the Mr. Clint, Captain Trosclair did not do so, in part because he was the only person on board and could not pilot the boat and rescue Plaintiff at the same time. *See* Rec. Doc. 85-6 at 5-7. There were waves and a current, which required Captain Trosclair to man the boat's controls to hold the Mr. Clint in position. *See id.*

Instead, Captain Trosclair radioed for assistance and the M/V Revelation arrived at the scene twenty minutes later. Rec. Docs. 51-3 ¶ 18; 54-3 ¶ 18. While the captain maneuvered the Revelation, the deck hands threw a life preserver to Plaintiff and pulled him to the Revelation. *See* Rec. Doc. 85-5 at 21. The deck hands then helped Plaintiff climb onto the Revelation. *See id.*

Under general maritime law, Plaintiff brought a negligence claim against Chevron, who owned the platform and the Mr. Clint, and Danos, who employed the Captain on the Mr. Clint.[2] *See* Rec. Docs. 1 ¶¶ 8-9; 29 ¶ 3. Plaintiff alleges that, as a result of Defendants' negligence, he suffered physical and mental injuries while he struggled to hold onto the boat landing during the twenty

---

[2] Plaintiff also brought a negligence claim against Jade Marine, Inc., who owned and operated the Revelation, but that claim was previously dismissed with prejudice when the Court granted Jade Marine's motion for summary judgment. *See* Rec. Doc. 66.

3

minutes before the Revelation arrived. *See* Rec. Docs. 1 ¶ 7; 15 ¶ 1. Chevron moved for summary judgment on Plaintiff's negligence claim. Rec. Doc. 85. Plaintiff timely filed an opposition. Rec. Doc. 93.

**LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618.

"Negligence is an actionable wrong under general maritime law." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). To succeed on a negligence claim, a "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Id.* The instant motion addresses two prongs of this analysis—duty and causation. *See* Rec. Doc. 85-2 at 1, 4-7.

Chevron argues that the absence of a deckhand from the Mr. Clint was not a cause of Plaintiff's injuries. *See* Rec. Doc. 85-2 at 4-5. Chevron's argument has two independent prongs; first, that the presence of a deckhand would not have averted Plaintiff's fall and, second, that the presence of a deckhand would not have helped rescue Plaintiff from the water more quickly. *See id.* With respect to the first prong, Chevron submits testimony from Ricky Trosclair, the Captain of the Mr. Clint, that Plaintiff never reached the Mr. Clint during his rope swing transfer. *See* Rec. Doc. 85-6 at 13-14, 24-25. This is consistent with Plaintiff's own testimony. *See* Rec. Doc. 85-5 at 25-26. Therefore, Chevron has presented competent summary judgment evidence demonstrating the absence of a genuine issue of material fact about whether a deckhand would have

5

prevented Plaintiff's fall. Plaintiffs have offered no evidence to the contrary; their opposition is silent as to the first prong of Chevron's argument. *See* Rec. Doc. 93 at 5-8. Therefore, Chevron is entitled to summary judgment on the question of whether Chevron's failure to have a deckhand on the Mr. Clint caused Plaintiff's fall.

However, the opposite is true with respect to the second prong of Chevron's argument. Plaintiff has provided ample competent summary judgment evidence that the absence of a deckhand impeded Plaintiff's rescue once he fell into the water. Captain Trosclair testified that, while he could have thrown a life preserver to Plaintiff and lowered the Jacob's ladder, Captain Trosclair could not effectively use either rescue tool because he was alone on the Mr. Clint. *See* Rec. Doc. 85-6 at 6-7, 10-11, 22-23. Specifically, Captain Trosclair could not operate the boat's controls while attempting to rescue Plaintiff; abandoning the controls to rescue Plaintiff would have risked losing control of the boat to the waves and current. *See id.* at 6-7, 22-23. The investigation report prepared by Chevron also indicates that the absence of a deckhand caused Plaintiff to remain in the water longer than he otherwise would have. *See* Rec. Doc. 93-2 at 44, 53, 55. Plaintiff's theory of the case is that he was injured while waiting in the water to be rescued. *See, e.g.*, Rec. Doc. 1 ¶ 7. Therefore, a reasonable jury could find that, if the absence of a deckhand increased the

6

amount of time Plaintiff spent in the water, that the absence of a deckhand caused Plaintiff's injuries. Summary judgment is therefore inappropriate on the question of whether the absence of a deckhand caused Plaintiff's injuries.

Chevron's second argument is that it had no duty to install and maintain a "man overboard" ladder at the platform in question. *See* Rec. Doc. 85-2 at 5-6. Generally, "[u]nder maritime law, a plaintiff is owed a duty of ordinary care under the circumstances." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 211. Determining whether a duty a exists and, if so, the extent of that duty, are questions of law that "involve[] a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Id.* A harm is "a foreseeable consequence . . . if . . . [it] might have been anticipated by a reasonably thoughtful person . . . as a probable result of the act or omission . . . ." *Id.*

Common sense dictates that a risk of falling into the water necessarily exists when workers transfer to and from offshore platforms. A reasonably thoughtful person would realize this potential harm and therefore have some duty to take steps to minimize the risk to those who fall into the water. That being said, whether that duty necessarily encompassed a requirement to install a "man overboard" ladder will ultimately depend on the evidence offered at trial. But at the summary judgment stage,

7

Plaintiff has offered sufficient evidence to proceed on the theory that Chevron's duty of care included a requirement to install a "man overboard" ladder, especially given the evidence in the record that Plaintiff could not climb back onto the boat landing and not every boat near the platform was able to rescue workers who fell into the water.

Chevron's third argument is that the accident did not cause Plaintiff's alleged right shoulder injury. *See* Rec. Doc. 85-2 at 7. Plaintiff has produced sufficient competent summary judgment evidence to establish a genuine issue of material fact as to the cause of Plaintiff's right shoulder injury. Chevron is correct that Plaintiff's physician, Doctor Malcolm Stubbs, testified that repeated rope swing transfers could cause shoulder injuries over time, regardless of the accident at issue here. *See* Rec. Doc. 93-2 at 69-74. But Dr. Stubbs also testified that Plaintiff's right shoulder injury was likely caused by the accident because Plaintiff reported suffering "several episodes of hyperextension and hyperflexion of his shoulder joint" while holding onto the boat

landing. *See id.* at 65, 68. Relying on Dr. Stubbs' testimony, a reasonable jury could conclude that the accident caused Plaintiff's shoulder injury. Therefore, summary judgment is inappropriate on the question of whether Chevron's actions caused Plaintiff's right shoulder injury.

New Orleans, Louisiana, this 1st day of March, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE